IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TRIA BEAUTY, INC.,

    Plaintiff,

  v.

NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, et al.,

    Defendants.

No. C 12-05465 WHA

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this insurance coverage action, defendants move for summary judgment. On dispositive issues the motions are **GRANTED** and judgment will be entered in favor of defendants.

## STATEMENT

**1.   THE BEAUTY PRODUCT PRODUCERS.**

Tria Beauty, Inc. is a manufacturer and seller of beauty products. It produces the Tria Hair Removal Laser ("Tria Hair"), a laser hair-removal device for use at home, and the Tria Skin Perfecting Blue Light ("Tria Skin"), a light-based acne treatment product. One of Tria's competitors is Radiancy, Inc., which is not a party to this action. Radiancy produces "no!no! Hair" and "no!no! Skin" products that compete with Tria Hair and Tria Skin, respectively.

**2.      THE INSURANCE POLICIES.**

The insurers' summary judgment motions turn on language in two insurance policies. Both insurers contend that Radiancy's counterclaims in a separate action did not trigger coverage under clauses in the policies providing a duty to defend against injuries caused by disparagement. The insurers further contend that even if Radiancy's counterclaims were covered under the disparagement clauses, there was no duty to defend because one or more exclusions applied. As explained below, this order holds that the disparagement coverage clauses were triggered for both insurers, but that one of the insurers (Travelers) had no duty to defend because an intellectual-property exemption applied.

Tria purchased insurance from defendant National Fire Insurance Company of Hartford for the period of January 1, 2008, through January 1, 2010. The insurance policy included coverage for "personal and advertising injury" as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply. . . .

The policy defined personal and advertising injury as injury arising out of several offenses, including:

> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> . . .
>
> g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.

Relevant to the instant motions, the policy contained two notable exclusions:

> g. Quality Or Performance Of Goods – Failure To Conform To Statements:
>
> 'Personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement'.
>
> . . .

2

i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. . . .  However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan.

For the period from January 1, 2010, through January 1, 2012, Tria purchased similar insurance from defendant Travelers Property Casualty Company of America.  The provision of the Travelers policy covering personal and advertising injury provided:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

The Travelers policy defined personal and advertising injury as follows:

[Advertising Injury] Means injury, other than "personal injury", caused by one or more of the following offenses:

(1) Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

. . .

(3) Infringement of copyright, "title" or "slogan" in your "advertisement," provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

. . .

[Personal injury] Means injury, other than "advertising injury," caused by one or more of the following offenses:

. . .

(4) Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or the "suit" is brought by a person or organization that claims

3

> to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

The Travelers policy also included comparable exclusions. Specifically, the policy stated that it did not apply to:

> g. Quality or Performance of Goods – Failure to Conform to Statements
>
> "Advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".
>
> . . .
>
> i. Intellectual Property
>
> "Personal injury" or "advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation:
>
> . . .
>
> (5) Trademark;
>
> . . .
>
> (7) Other intellectual property rights or laws.
>
> This exclusion does not apply to:
>
> (1) "Advertising injury" arising out of any actual or alleged infringement or violation of another's copyright, "title" or "slogan" in your "advertisement", or
>
> (2) Any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation of another's copyright, "title" or "slogan" in your "advertisement".

**3.    THE UNDERLYING ACTION AND COUNTERCLAIM.**

In November of 2010, Tria sued Radiancy in this district alleging claims, *inter alia*, of false advertising, unfair competition, and trademark infringement. *TRIA Beauty, Inc. v. Radiancy, Inc.*, No. 3:10-CV-05030-RS, Dkt. No. 1. The action settled before trial and the parties stipulated to dismissal with prejudice in July of 2012. In the course of that action, Radiancy counterclaimed against both Tria and its celebrity spokesperson, Kim Kardashian, alleging that Tria made false and misleading statements in advertisements about *its own* Tria

4

1   Hair and Tria Skin products, and that these statements damaged Radiancy.  Among other things,

2   Radiancy challenged Tria's advertising claims that:

3   •     The Tria Hair product was "safe," "effective," and "painless"

4   •     The Tria Hair product is equivalent to professionl laser hair removal

5   •     The Tria Hair product is the "first" and "only" at-home laser hair removal device
6         cleared by the FDA

7   •     The Tria Skin product is "faster,""superior," "more powerful," and more
8         "advanced" than other acne treatment products on the market

9   •     The Tria Skin product is the "first and only" blue light acne treatment equivalent
10        to blue light therapy available from dermatologists

11  Radiancy's counterclaim alleged several types of harm from Tria's advertising, including

12  lost sales and harm to the goodwill associated with its competing no!no! Hair removal and Skin

13  products.  Notably, Radiancy also counterclaimed for infringement of its registered trademarks.

### 4.   THIS ACTION AND THE INSTANT MOTIONS.

After receiving Radiancy's counterclaims, Tria tendered that action to National Fire and Travelers for coverage and defense under the insurance policies cited above.  According to Tria, language in both policies relating to publication of material that "disparages" goods, products, or services obligated the insurers to defend Tria against the counterclaim.  Both insurers rejected Tria's request for a defense.

Tria filed this coverage action in October 2012.  Travelers now moves for summary judgment on the ground that none of Radiancy's allegations nor the extrinsic evidence raised by Tria created the possibility that Tria could be liable for "personal and advertising injury" as defined by the policies.  Travelers argues that Radiancy only objected to Tria's claims about its own products, and thus did not allege that Tria "referred to" or "disparaged" Radiancy's products.  In the alternative, Travelers argues that even if there were a potential for coverage, exclusions in the policies precluded a duty to defend.  National Fire joins in Travelers' motion and further argues that (1) Tria's alleged offenses regarding skin care products did not take place

5

during the coverage period for the National policy, and (2) National Fire had no duty to defend the Radiancy counterclaim allegations against Kim Kardashian.

This order follows full briefing, oral argument, and supplemental submissions.

**ANALYSIS**

**1. LEGAL STANDARDS.**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. If the moving party does not satisfy its initial burden, then the non-moving party has no obligation to produce anything and summary judgment must be denied. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

When interpreting an insurance policy, "whether a particular policy provides a potential for coverage and a duty to defend . . . is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). Summary judgment is appropriate where "the ultimate question of coverage can be determined as a matter of law on undisputed facts." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 298 (1993).

In order to trigger a duty to defend, an insured need only show a *potential* for coverage:

> Once the insured has established potential liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, the insurer must assume its duty to defend unless and until it can conclusively refute that potential. Necessarily, an insurer will be

6

> required to defend a suit where the evidence suggests, but does not conclusively establish, that the loss is not covered.
>
> . . .
>
> In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.

*Id*. at 298, 300 (emphasis in original). "The duty to defend is, of course, broader than the duty to indemnify. Where there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer." *CNA Cas. of Calif. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 605 n.1 (1986)

### 2. COVERAGE FOR IMPLIED DISPARAGEMENT.

Both insurers' polices had identical language regarding advertising falsehoods that triggered coverage: material "that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Whether this language applies to implied disparagement depends on the outcome of a battle of authorities evaluating the same language. Tria cites *Travelers Prop. Cas. Co. v. Charlotte Russe Holding, Inc.*, 207 Cal. App. 4th 969, 976–80 (2012), for the proposition that an insurer's duty to defend is triggered by an underlying complaint alleging disparagement by implication, even when claims of superiority are made by an insured about its own product. Travelers cites *Total Call Int'l, Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161 (2010), for the proposition that the duty to defend is triggered by an underlying complaint alleging facts which would support a tort claim for trade libel, and that trade libel requires a statement "that specifically refers to the plaintiff and derogates the quality of its products or services." Another court of appeal decision from 2012 addressed the same issue and sided with *Total Call* over *Charlotte Russe*. *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 148 Cal. Rptr. 3d 679 (2012). That decision, however, was superseded in February due to a grant of review by the California Supreme Court. *See Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 152 Cal. Rptr. 3d 420 (2013); *see also* CRC 8.1105(e)(1) and 8.1115. Our federal court of appeals has not addressed weighed-in on this split in state authority.

This order finds in favor of Tria on this issue. The question raised by the conflicting authorities is whether the policy language included coverage for claims that sounded in

7

disparagement in the broader sense of injurious falsehoods, as opposed to a narrower category of claims that met the pleading requirements for trade libel. This turns on an ambiguity in the policy term "disparages," which must be resolved by construing the language in a way that is consistent with Tria's objectively reasonable expectations, and in case of doubt, against the insurers. *Seabord*, 176 Cal. App. 3d at 605 n.1; *see Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1036–37 (2002).

In this regard, it is significant that the disjunctive policy language (" slanders or libels . . . or disparages") did not delineate specific causes of action to which 'disparagement' applied. This was done in the exclusions section, which carved out a variety of subject matter from coverage. Given this structure, reading the policy broadly to cover implied, 'own-product' disparagement would be consistent with a reasonable insured's objective expectations.

The insurers' assertion of *Total Call*, moreover, is unpersuasive for two reasons. *First*, *Total Call* is distinguishable on its facts. *Total Call* found that the insured's advertisements did not implicitly comment on the third-party's products in the underlying action. Thus, *Total Call*'s reasoning falls outside the implied disparagement context. *See* 181 Cal. App. 4th at 171.

*Second*, *Total Call* reached its holding by drawing on the California Supreme Court's decision in *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986). *Blatty* held that, due to First Amendment concerns, torts that turn on an injurious false statement require that the statement specifically refer to, or be 'of and concerning' the plaintiff in some way. *Total Call* therefore reasoned that disparagement in the policy did not apply to an advertisement that did not (impliedly or otherwise) specifically refer to the third party. *See* 181 Cal. App. 4th at 171. *Blatty*, however, was not an insurance coverage action interpreting policy language. Rather, it ruled on the sufficiency of a complaint against a general demurrer. By applying *Blatty* in the insurance coverage context, *Total Call* imported an exclusion into the policy language that the underlying claim must be meritorious. There was no such limitation the policy language in *Total Call*, nor is there here.

*Charlotte Russe* recognized that a non-meritorious underlying action does not preclude coverage:

8

> [E]ven if it were true that [the third party] claim against the [insured] parties could not be viable without alleging all the elements of a trade libel cause of action, as Travelers argues . . . the result here would be no different. The insurer's duty to defend is not conditioned on the sufficiency of the underlying pleading's allegations of a cause of action; that is an issue for which the policy entitled the [insured] parties to an insurer-funded defense. The fact that [the insurer] may have known of a good defense, even an ironclad one, to the [underlying] claim did not relieve it of its obligation to defend its insured.

207 Cal. App. 4th at 979–80 (citations and quotation marks omitted).  As the above-cited quotation reflects, Travelers has lost this same battle before.  This order adopts *Charlotte Russe*'s reasoning and finds that the disparagement policy language at issue here covered implied disparagement claims based on statements about the insured's own products.

For the purposes of this issue, the language in both policies is the same.  Thus, this order holds that the insurer's policies provide coverage for implied disparagement claims arising from insured's statements about its own products.  Summary judgment on this issue is **DENIED**.

### 3. ALLEGATIONS REGARDING TRIA HAIR DURING THE NATIONAL FIRE POLICY PERIOD.

National Fire also objects on the ground that the disparagement policy language was not triggered because none of the advertising statements at issue occurred during the term of the policy (January 1, 2008, through January 1, 2010).  Tria responds that, taken together, paragraphs 37, 65 and 66 of Radiancy's counterclaim in the underlying action allege that a Tria spokesperson stated that Tria Hair was "the only laser you can buy at home that is FDA cleared" during a QVC commercial in 2009.

These allegations do not trigger implied disparagement coverage.  As National Fire points out, the Tria spokesperson's statement asserts th superiority of the "first" and "only" laser hair-removal device cleared by the FDA for home use.  Because Radiancy's hair product used a heated wire, Tria's claims about its laser device could not be read to disparage Radiancy's non-laser device.  Even though Tria and Radiancy's products competed as a general matter, this is not equivalent to an allegation that Tria Hair was the only FDA-cleared *product* on the market.  Tria's contention that this statement impliedly disparaged Radiancy's device is not plausible.

9

Tria points to a statement in the same commercial that Tria Hair was "FDA cleared for permanent hair removal." This statement, however, was made by a QVC host, not by Tria, and has been maintained on the QVC website. Moreover, it was made in the context of statements referring to Tria's product as a FDA-cleared *laser* device. It is not plausibly interpreted as implied disparagement by Tria of Radiancy's non-laser device.

Tria also points to other alleged statements on websites regarding FDA clearance and claims of permanent hair removal. Tria admits that these claims fell outside the National Fire policy period as alleged in the Radiancy counterclaim because the dates on which the websites were a "last visited" were after January 1, 2010. Nevertheless, Tria argues that they create a disputed issue of material fact regarding actual publication date. This order disagrees. There is no plausible dispute that the dates in the counterclaim on which Radiancy based its claims are accurate as to when they were "last visited." Thus, there is no dispute that the Radiancy counterclaim alleges facts outside of the National Fire policy period. Tria suggests that impliedly disparaging statements may have existed on the same websites during the policy period. This is pure speculation, not a genuine factual dispute.

Tria has failed to identify allegations in the complaint that impliedly disparaged Tria Hair during the National Fire policy period. Therefore, summary judgment on this issue in favor of National Fire is **GRANTED**.

### 4. ALLEGATIONS REGARDING TRIA ACNE AND KIM KARDASHIAN POST-DATE THE NATIONAL FIRE POLICY PERIOD.

Tria concedes that the allegations in the underlying action regarding Tria Acne and Kim Kardashian post-dated the National Fire policy period ending January 1, 2010. Thus, National Fire had no duty to defend Tria against the Radiancy counterclaims as they related to the Tria Skin product and Kim Kardashian's promotional activities. Summary judgement on this issue in favor of National Fire is **GRANTED**.

Because summary judgment has now been granted in favor of National Fire as to both the Tria Hair and Tria Skin advertising statements, this order effectively grants National Fire's summary judgment motion *in toto*. Because there "is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied

10

covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36–37. Summary judgment in favor of National Fire is accordingly **GRANTED**.

It is not necessary to determine whether Tria's advertising statements from 2010-onward actually constituted implied disparagement covered by the Travelers policy. As explained below, Travelers' duty to defend is obviated by one of the exclusions in its policy.

### 5. THE NON-CONFORMITY EXCEPTION.

Travelers raises two exclusions in its policy that it contends obviated any duty to defend. The first is a non-conformity exclusion which exempted from coverage injuries "arising out of the failure of goods, products or services to conform with any statement of quality or performance made in [the insured's] advertisement." Again, Travelers relies on *Total Call*, which ruled that identical policy language was "not ambiguous" and "preclude[d] coverage for third party claims predicated on allegations that the insured's advertising misrepresented the quality or price of the insured's own product." 181 Cal. App. 4th at 172–73.

This order finds *Total Call* again inapposite. Tria relies on a decision from this district that squarely addressed *Total Call* and the same non-conformity exclusion in the implied disparagement context: *Infor Global Solutions v. St. Paul Fire & Marine Ins. Co.*, 686 F. Supp. 2d 1005, 1006–08 (N.D. Cal. 2010) (Judge James Ware). *Infor Global* distinguished *Total Call* on the ground that *Total Call* did not involve an implied-disparagement fact pattern. (This order further notes that the decisions on which *Total Call* relied likewise were not implied-disparagement decisions.) *Infor Global* then ruled that in the implied disparagement context, the harm suffered by the third party competitor does not arise out of the failure of the insured's products to conform with their advertised quality. Rather, the harm arises out of "negative comparisons Plaintiff made about competitors vis-a-vis Plaintiff's products. It is irrelevant whether Plaintiff's products actually possessed the attributes advertised by Plaintiff." *Id*. at 1007–08.

Thus, in *Total Call* the harm to the third party was lost market share that resulted from the insured misrepresenting the number of minutes available from its phone cards. *See* 181 Cal.

11

1 App. 4th at 168–69, 171.  The phone cards did not live up to the promised number of minutes
2 suggested by the advertising, giving the insured an unfair advantage.  Here, the harm did not
3 proceed from whether Tria's products were indeed superior.  It arose out of the implication from
4 Tria's advertising that Radiancy's products were inferior.

### 6. THE INTELLECTUAL-PROPERTY EXCLUSION.

6 The Travelers intellectual-property exclusion exempted injuries from an enumerated list
7 of claims, including trademark infringement, "*or* any other . . . 'advertising injury' alleged in any
8 claim or 'suit' *that also alleges* any such infringement or violation" (emphasis added).  Travelers
9 argues that the plain terms of this exclusion exempted not only trademark infringement claims,
10 but also suits on other claims that also allege trademark infringement.

11 Travelers cites several authorities for this interpretation of the policy language.  The most
12 persuasive are *S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383, 397–398
13 (2010), and *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, 2003 WL 231988252, at
14 *5 (S.D. Cal. July 9, 2003) (Judge Irma Gonzales).  In *S.B.C.C.*, the court of appeal held that a
15 similarly-worded IP exclusion was "clear and explicit; it expressly states that in addition to the
16 listed forms of intellectual property infringement, there is no coverage for '*any other injury or*
17 *damage that's alleged in any claim or suit which also alleges any such infringement or*
18 *violation*'" (emphasis in original).  Although the insured protested that only one the claims in the
19 underlying action was an intellectual property claim, the court of appeal upheld summary
20 judgment under the IP exclusion.

21 *Molecular Bioproducts* likewise involved an IP exclusion providing no coverage for "any
22 other injury or damage . . . alleged in a claim or suit that also alleges any such . . . infringement
23 or violation."  The court ruled that the insured was not entitled to a defense in the underlying
24 action because "all of [the third party] counterclaims are alleged in a suit that also alleges
25 violation of the patent laws."  The court found this policy language " clear and explicit and . . . ,
26 therefore, dispositive."  2003 WL 23198852, at *5.

27 Tria cites no authority for its insistence that there must have been a logical or legal link
28 between the trademark infringement and the implied disparagement claims for the exclusion to

apply. Nor was there any such limitation in the policy language. Thus, the exclusion applied, Travelers had no duty to defend, and Travelers did not breach the insurance contract.

Again, because there "is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36–37. Summary judgment in favor of Travelers is accordingly **GRANTED**.

**CONCLUSION**

Summary judgment in favor of Travelers and National Fire is **GRANTED**. A separate judgment will be entered.

**IT IS SO ORDERED.**

Dated: May 20, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13